**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**


| | |
|---|---|
| SHINY STRANDS, INC. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) |
| JPMORGAN CHASE & CO, | ) |
| JPMORGAN BANK, N.A. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |


Class Action Complaint


Plaintiff Shiny Strands, Inc. bring this class action complaint on behalf of itself and those similarly situated (hereinafter "Plaintiff") against Defendants JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., (hereinafter "Chase") to stop Defendants' unlawful conduct and to obtain redress for all persons and businesses injured by Defendants' conduct.

For their class action complaint, Plaintiff alleges as follows based upon its personal knowledge and upon information and belief, including investigation conducted by its attorneys.

## INTRODUCTION

1. Chase has prioritized corporate greed at the expense of its small business customers.

2. Rather than processing Paycheck Protection Program ("PPP") applications on a first-come, first-served basis as required by the rules governing that program, Chase prioritized loan applications seeking higher loan amounts because processing those applications first generated larger loan origination fees for the bank.

3. Chase concealed from the public that it was reshuffling the PPP applications it received and prioritizing the applications that would make the bank the most money. As a result, thousands of small businesses— including the plaintiff in this action—trusted that Chase would process the applications on a first come, first served basis.

4. Had Chase been honest, small businesses could have (and would have) submitted their PPP applications to other financial institutions that were processing applications on a first-come, first-served basis.

5. As a result of Chase's dishonest behavior, however, thousands of small businesses that were entitled to loans under the PPP were left with nothing because Chase chose to maximize its loan origination fees rather than comply with the rules of the program and serve the needs of its small business customers.

## BACKGROUND

6. Small businesses are the backbone of the American economy. Indeed, about half of the people that work in America work for a small business. These businesses and their employees have been hit hard due to the global COVD-19 pandemic.

7. On March 11, 2020, the COVID-19 outbreak was characterized as a pandemic by the World Health Organization (WHO). In late March, 2020, Governor JB Pritzker issued an executive Stay at Home Order in the State of Illinois in order to slow the spread of COVID-19.

8. On March 25, 2020, in response to the economic fallout of the COVID19 crisis, The United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. The CARES Act passed the House the next day and was signed into law by President Trump on March 27, 2020. The legislation included $377 billion in federally guaranteed loans to small businesses and established a $500 billion government lending program for distressed companies. Unprecedented in size and scope, the legislation was the largest-ever economic stimulus package in U.S. history, amounting to 10% of the total U.S. gross domestic product.

9. As part of the CARES Act, the Federal Government Created a $349 billion loan program, called the "Paycheck Protection Program" (PPP), for small businesses with funds available for loans originated from February 15 through June 30, 2020. The PPP intended to provide American small businesses with eight weeks of cash-flow assistance through 100 percent federally guaranteed loans. The loans are backed by the United States Small Business Administration (SBA). The SBA is a United States government agency that provides support to entrepreneurs and small businesses. The loans were backed by the Federal Government and SBA but administered by private banks. One of the most important aspects of the PPP

loans is that the terms provide criteria for loan forgiveness through a process that incentivizes companies to retain, and not "lay off", employees during this crisis.

10. It was the express intent of the US Senate and Congress in passing the CARES Act that the funds be used to support small businesses, particularly rural businesses, veteran owned businesses, woman owned businesses, and businesses owned by socially and economically disadvantaged persons. The text of the Bill itself provides "It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years."

11. At President Trump's signing of the CARES Act, ranking member of the House Small Business Committee Representative Steve Chabot (R-Ohio) praised the legislation as giving small businesses a great chance to reopen. Senator Marco Rubio (R-Fl), Chairman of the Senate Small Business and Entrepreneurship stated that the "bipartisan small business package…will provide emergency relief so that millions of American workers can keep their jobs and millions of small businesses

can stay open."Senate Majority Whip, Senator John Thune (R-SD) stated that the funds provided by the CARES Act "will deliver relief to small businesses to help them and their workers weather this storm."

12. The United States Department of the Treasury announced that starting April 3, 2020, small businesses and sole proprietorships could apply for and receive loans to cover their payroll and other certain expenses through existing SBA lenders. Starting April 10, 2020, independent contractors and self-employed individuals could apply.

13. Within this context, Chase served as an intermediary between small businesses and federal funds. Not only did Chase encourage small business owners to apply, Chase encouraged small business owners to act fast.

14. Evidently, time was of the essence. In fact, the Small Business Administration Regulations that govern the PPP funds mandated that the funds be distributed "first come, first served." There was a line, a "queue". If you applied sooner rather than later, according to the SBA regulations, your place in line should have been considered, and your loans issued accordingly, "first-come, first-served". However, in contravention with its implied and explicit representations, and their own representations to the public, this was not how Chase operated.

15. The terms of the PPP loans only allow for each small-business borrower to obtain a single SBA backed loan through the PPP. The SBA Regulations provide: "The Administrator, in consultation with the Secretary, determined that no eligible borrower may receive more than one PPP loan. This means that if you apply for a PPP loan you should consider applying for the maximum amount." Upon information and belief, when a borrower applied for multiple PPP loans through different lenders, it triggered a law enforcement fraud alert. Therefore, the majority of PPP borrowers made a single application through a single financial institution, putting "all their eggs in one basket."

16. Upon information and belief, Chase received thousands of applications and chose to prioritize higher loans for bigger companies, despite the SBA requiring a first-come, first-serve distribution of funds. As a result of its covert lending prioritization practices, preferencing larger "small businesses" over true small businesses, Chase—along with other banks—received nearly $6 billion in fees while hundreds of thousands of loan applicants got nothing.

17. Data provided by the U.S. Small Business Administration reveals that, rather than processing PPP loan applications on a "first come, first served" basis as required, Chase prioritized and front-loaded applications with higher loan amounts. This is shown by comparing data from loans processed between April 3, 2020

(when the PPP started) and April 13th versus data between April 13th and April 16th (when the program ran out of money).

18. Chase chose to prioritize the applications with higher loan amounts because processing those applications first resulted in larger origination fees for Chase.

19. Specifically, Chase was entitled under the PPP to receive origination fees of 5% on loans up to $350,000; 3% on loans between $350,000 and $2 million; and 1% on loans between $2 million and $10 million.11 That means that Chase could make up to $17,500 for processing loans up to $350,000; up to $60,000 for processing loans between $350,000 and $2 million; and up to $100,000 for processing loans between $2 million and $10 million.

20. Upon information and belief, Chase prioritized those PPP loans that earned them the highest origination fees rather than processing PPP loan applications on a "first come, first served" basis as required. In doing so, Chase enriched itself at the expense of American taxpayers, undercut the intent of Congress and the Senate, undercut the dollar-per-dollar effectiveness of the CARES Act itself, and caused irreparable harm to countless small businesses and workers who actually needed the temporary funding of the PPP loans to make payroll, retain their employees, and stay afloat.

21. Chase knew that it received more PPP applications than it would be able to process but concealed from Plaintiff and the general public that it was reshuffling the applications they received to maximize profits for the bank.

22. Had Chase informed Plaintiff and the general public of the truth, then Plaintiff would have submitted their PPP applications to other lending institutions that were processing applications on a first come, first- served basis.

23. Plaintiff, on behalf of itself and the proposed class (as defined below), seeks an injunction requiring Defendants to cease the unlawful activities alleged herein and an award of damages to himself and all members of the class, together with the costs of suit and reasonable attorneys' fees.

## JURISDICTION AND VENUE

24. The Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed Class Members exceed $5,000,000 in the aggregate.

25. This Court has personal jurisdiction over Defendants because Defendants do business in this District and a substantial number of the events giving rise to the claims alleged herein took place in Illinois.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied for the subject PPP loans while in this District and Defendants marketed, promoted, and took applications for the PPP loans in this District.

**PARTIES**

27. Plaintiff Shiny Strands, Inc is a small business. It meets the criteria for funding under the PPP, which in reliance of Defendants' false and deceptive advertising, marketing, and loan application processing schemes, made its single permitted application for loan assistance through the PPP with Chase.

28. Defendant JPMORGAN CHASE & CO. is the parent of all Chase entities. JPMORGAN CHASE & CO. is a diversified financial services company providing banking, insurance, investments, mortgage banking and consumer finance to individuals, businesses and institutions in all 50 states and internationally. CHASE & CO. is headquartered in New York, New York.

Through its subsidiaries, JPMORGAN CHASE & CO. conducts substantial business in this district.

29. Defendant JPMORGAN CHASE BANK N.A., is the main banking arm of CHASE & CO. and is headquartered in Columbus, Ohio. Chase conducts substantial business in all Counties within the State of Illinois.

30. When in this Complaint reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## FACTUAL ALLEGATIONS

31. In or around March of 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that their business would be seriously impacted by the COVID-19 crisis and the shelter-in-place orders, sought to obtain a PPP loan through a financial institution.

32. On April 7, 2020, Plaintiff submitted a complete, thorough, and timely application to Chase to obtain a PPP loan. After submitting the PPP loan

application, Plaintiff waited to get funded. While Plaintiff waited to get funded, it made strategic business decisions, made personnel decisions, and took other steps in reliance on Chase's obligation to process applications on a "first-come, first-served" basis.

33. On information and belief, Chase did not follow the SBA Regulations or the intent of The Senate and Congress in distributing the PPP funds. Instead, Chase moved high dollar applications from large and mid-sized companies to the "front of the line" in order to maximize their origination fees on these Federally backed loans at taxpayer expense. Chase enriched itself at the expense of Plaintiff and the putative class of small business owners.

34. Plaintiff reasonably relied on Chase's affirmative representations, communications, and advertising in making the choice to apply for their one PPP loan through Chase, not knowing that, contrary to those representations, Chase would prioritize large borrowers, making it less likely that Plaintiff would be able to obtain a loan through the PPP. As a result of their reliance on Chase's representations, Plaintiff suffered economic harm. Had Plaintiff known that Chase was prioritizing large loans, Plaintiffs could have avoided the harm by applying for a loan at a different bank, such as a local community bank.

35. As a result of the conduct of Chase, Plaintiff's businesses suffered financial harm, wrongfully lost the opportunity to obtain funding that was likely to be forgiven by the Federal Government, lost the time value of those available PPP funds, lost access to capital in a difficult economic time,`and generally lost economic opportunities to conduct business due to lack of operating capital.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on behalf of itself and a state-wide class, defined as indicated below.

37. **The Class Definition**:

All businesses in the State of Illinois that met the criteria for receiving a loan under the PPP, i.e. met the criteria for eligibility and were not otherwise ineligible, between February 15 and June 30, 2020, who timely applied for a PPP loan through Chase, whose applications were not processed and/or who were not issued loans in accordance with SBA Regulations (i.e. "first-come, first-served) and in accordance with the stated intent of the CARES Act (i.e. prioritizing "small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals.

38. Excluded from the Class are Defendants, as well as their officers, employees, agents, board members and legal counsel, and any judge who presides over this action (or spouse or family member of presiding judge), as well as all past and present employees, officers and directors of Chase.

39. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with Plaintiffs' motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

40. *Numerosity:* The Class is composed of thousands of businesses, whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties and the courts.

41. *Existence and Predominance of Common Questions of Fact and Law*: There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

a. Did Defendants comply with all applicable SBA Regulations in processing applications for PPP funds and in distributing PPP funds in Illinois?

b. Did Defendants comply with their legal obligations under the terms of the CARES Act as third party intermediary administrators of the PPP funds?

c. Did Defendants have a policy and/or practice of prioritizing large PPP loans to larger businesses to the detriment of the putative class?

d. Did Defendants process PPP loan applications on a "first-come, first serve" basis?"

e. Did Defendants process applications in the order received, or did large PPP loans get moved "to the front of the line?"

f. Did Defendants prioritize maximizing origination fees over achieving the goals of the CARES Act and the PPP?

g. Did Defendants' conduct constitute an "unfair business practice" under the Illinois Consumer Fraud and Deceptive Practices Act (the "Act") ?

h. Did Defendants' conduct constitute an "unlawful business practice" under the Illinois Consumer Fraud and Deceptive Practices Act?

i. Did Defendants' conduct constitute a "fraudulent business practice" under the Illinois Consumer Fraud and Deceptive Practices Act?

j. Did Defendants' conduct constitute false advertising under the Illinois Consumer Fraud and Deceptive Practices Act?

k. Did the transactional nature of the PPP application process create a duty on the part of the Defendants to disclose material information to the PPP loan applicants?

l. Did Defendants disclose to the PPP applicants that the loan applications were not being processed on a first-come, first-served basis?

m. Did Defendants possess exclusive knowledge of material facts, with respect to the PPP loan application process, that could not have been known to the Plaintiffs or the public (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

n. Did Defendants actively conceal a material fact or facts from the Plaintiff (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

o. Did Defendants make a partial representation but also suppress some material fact or facts from the Plaintiff (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

p. Whether Defendants' conduct, as alleged herein, was intentional and knowing?

q. Whether Class Members are entitled to damages and/or restitution; and, if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein;

r. Whether Defendants are likely to continue to mislead PPP loan applicants and continue to violate SBA Regulations regarding processing and funding applications for PPP loans; and

s. Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit.

42. *Superiority.* In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward class members and to make injunctive or corresponding declaratory relief appropriate for all class members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, class members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

43. *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Plaintiffs have all been deceived by Defendants' unfair, unlawful, and fraudulent PPP loan application and funding practices, as alleged herein. The factual and legal bases of Defendants' liability to Plaintiff and each class member are substantially similar, resulting in injury to Plaintiff and each Class Member as a result of Defendants' actions as described herein.

44. *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class and Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff will fairly and adequately represent and protect the interests of other class members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other class members.

45. *Ascertainability*: Plaintiff and the Class Plaintiffs are informed and believe that Defendants keep extensive computerized records of its loan applications through, inter alia, computerized loan application systems and Federally mandated record keeping. Defendants have one or more databases

through which a significant majority of Class Members, if not 100% of Class

Members, may be identified and ascertained, and it maintains contact information,

including email and home mailing addresses, through which notice of this action

could be disseminated in accordance with due process requirements.

## FIRST CAUSE OF ACTION

On Behalf of the Class Against All Defendants (Violation of the

Illinois Consumer Fraud and Deceptive Practices Act)

46. Plaintiffs hereby incorporate by reference the foregoing allegations as if

fully set forth here.

47. Plaintiff asserts this cause of action on behalf of itself and members of

the class.

48. The Illinois Consumer Fraud and Deceptive Practices Act (the "Act")

defines unfair business competition to include the use or employment of any

deception, fraud, false pretense, false promise, misrepresentation or concealment,

suppression or omission of any material fact, with intent that others rely. 815 ILCS

505/2.

49. Chase has violated the Act by subverting both the process and the intent of PPP loans through prioritizing large borrowers to the detriment of the "small business" applicants the funds were intended to support. Further, they have unfairly made representations to their PPP applicants and the public about the process which unfairly induced applicants to apply with Defendants. Inducing a greater volume of PPP applicants was to the financial benefit of Defendants at the expense of the applicants.

50. These acts and practices were unfair because they generated undue public good will for Defendants, and caused Plaintiffs, and the other members of the putative Class, to falsely believe that Defendants were focused on serving small businesses when they were not, and that the PPP loan applications were processed fairly and "first-come, first-served" based on the program criteria when they were not. They caused small business owners, some of whom the banks did profit from, to submit applications when in reality those PPP loan applications were "at the back of the line." In this way, Defendants got to have it both ways – lots of small business applications to choose from and large borrower applications that could be prioritized.

51. The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications, and/or

motives of Defendants had, in this case the desire to profit from PPP loans, for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of the Act.

52. Through its unfair acts and practices, Defendants have improperly obtained money from the Federal Government at the expense of Plaintiffs and the Class. As such, Plaintiffs request that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, and to enjoin Defendants from continuing to violate the the Act as discussed herein and/or from violating the Act in the future, most notably if this program is funded again. Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SECOND CAUSE OF ACTION

On Behalf of the Class Against All Defendants (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.)

53. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

54. The Act prohibits unfair business competition and unfair or deceptive acts or practices.

56. As set forth above, the Defendants' conduct included affirmative representations about the loan approval process and the "focus" and "priorities" of the bank in processing and funding PPP loans which were not true. Those representations were made with the intent to generate public good will and to induce consumers to reasonably rely on those representations and choose Defendants when making their decision about who to make their PPP loan application through.

57. Defendants' acts and practices as described herein have deceived Plaintiff and the Class and were highly likely to deceive members of the consuming public. Specifically, in deciding with which bank should they apply for a PPP loan, Plaintiff relied upon Defendants' misleading and deceptive representations regarding its loan application and approval process. Each of these factors played a substantial role in Plaintiff's decision to apply with Defendants, and Plaintiff would not have applied for PPP loans with Defendants in the absence of Defendants' misrepresentations. Had they applied at a different bank, Plaintiff and the Class could have obtained PPP funding. Accordingly, Plaintiff has suffered

monetary and economic loss as a direct result of Defendants' practices described above.

58. As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and members of the Class. Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their false, misleading and deceptive conduct.

59. Through its unfair acts and practices, Defendants have improperly obtained money from the Federal Government at the expense of Plaintiff and the Class. As such, Plaintiffs requests that this Court cause Defendants to disgorge this money to Plaintiffs and all Class Members, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION

On Behalf of the Class Against All Defendants (Violation of the Illinois False Advertising Law 815 ILCS 505/2)

60. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

61. The Illinois False Advertising Law prohibits unfair, deceptive, untrue, or misleading communications and statements.

62.. Defendants made or caused one another to make false and misleading representations to Plaintiff and Class Members concerning the nature of the services they would be providing as PPP loan administrators. Defendants knew, or should have known, that the PPP applications would not be processed on a "firstcome, first-served basis" and yet they represented to the contrary to their customers and to the public.

63. Through its false representations and unfair acts and practices, Defendants have improperly obtained money from the Federal Government at the expense of Plaintiffs and the Class. As such, Plaintiffs requests that this Court cause Defendants to disgorge this money to Plaintiffs and all Class Members, and to enjoin Defendants from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FOURTH CAUSE OF ACTION

On Behalf of the Class Against All Defendants FRAUDULENT

CONCEALMENT

64. Plaintiffs hereby incorporate by reference the foregoing

allegations as if fully set forth herein.

65. Due to the nature of the transaction and contemplated contract

between them, Defendants owed a duty to Plaintiffs and the Class to

reasonably disclose facts material to that transaction and to not hide or

obscure facts material to that transaction.

66. At all relevant times, Defendants possessed and had exclusive

knowledge of material facts not known to the Plaintiff and Class Members,

i.e. the knowledge of how the PPP applications were going to be processed,

prioritizing large businesses borrowing large amounts of money and not

first-come, first-served.

67. At all relevant times, Defendants actively concealed those material

facts from the public and their PPP loan applicants, by intentionally omitting

to disclose such facts and by intentionally misleading the Plaintiff and Class

with affirmative statements that were not true.

68. Even if Defendants made some partial representations, Defendants still made efforts to suppress material facts and did not fully disclose and contextualize the material facts known only to them.

69. Plaintiff and the Class reasonably relied on Defendants' representations in choosing to apply for a PPP loan with Defendant Banks.

70. As a direct result of Defendants' fraudulent concealment of facts material to the PPP loan application transaction, Plaintiff and the Class were induced to apply with Defendants and as a proximate result suffered economic and financial harm to be proven at trial but in excess of $5 million.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for the following relief:

1. For an order certifying the class as defined above, appointing Plaintiff as class representatives for the class, and appointing Plaintiff's counsel as class counsel for the class;

2. For an order declaring Defendants' actions to be unlawful;

3. For equitable relief to Plaintiff and Class Members;

4. For injunctive relief prohibiting Defendants from engaging in the misconduct described herein;

5. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and class members, including disgorgement, unjust enrichment, and all other available relief under applicable law;

6. For an award of treble damages pursuant to 18 U.S.C. § 1964(c) and any other applicable law;

7. For an award of punitive damages pursuant to applicable law;

8. For reasonable attorney's fees and expenses as permitted by applicable statutes and law, including, but not limited to, the Act.

9. For taxable costs;

10. For pre and post-judgment interest as allowed by law; and

11. For any other relief the Court deems just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that are so triable.

Dated: April 27, 2020

Steven Smith

5514 N. Wayne Avenue

Chicago IL, 60640

312-622-5545

stevesmithlaw88@gmail.com

*Attorney for Plaintiff and the Class*